## Cupp Unemployment Compensation Case.

Argued March 19, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Donald H. Stein,* with him *Stein, Storb and Mann,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WOODSIDE, J., June 11, 1964:

The claimant in this unemployment compensation case appealed from the decree of the board denying him benefits. He had been employed in a hardware store in Hazleton when he was arrested and committed to jail on charges of statutory rape, corrupting the morals of a child and bastardy. While under indictment and before trial, he was released on bail after 30 days in jail and reported to his employer who told him he had been replaced.

The referee denied compensation stating: "While the employer-representative indicated that the claimant's discharge was not primarily because of his arrest on morals charges, it was also because of negligence and inattentiveness to his employment at times which resulted in financial loss to the employer.

"While the claimant was indicted, he was later acquitted by a Luzerne County jury. The record also indicates that this claimant had been arrested on a prior occasion—four years ago—on similar charges. It was also indicated that subsequent to his acquittal by a Grand Jury, he has again been arrested for hindering and interfering with witnesses and is presently placed on bail."[1]

Upon appeal the board found that "During his incarceration he did not personally contact his employer to advise him as to when or if he would return to

---

[1] He was convicted on this charge. He was also indicted for fornication apparently after acquittal of the first charges and before conviction on this offense.

work." This, the board concluded was tantamount to abandoning his employment and it denied him compensation under §402(b)(1) of the Unemployment Compensation Law as last amended by the Act of December 17, 1959, P. L. 1893, 43 P.S. §802(b)(1) on the ground he had not taken all necessary and reasonable steps to maintain the employer-employe relationship.

The board's position is supported by the following testimony of the employer's witness: "Q. . . . did he have any communication with the Barnes Hardware whatsoever? A. No. And this is another thing that aggravated us—the only communication through his mother and sister was when they came in and complained about his salary. He never informed or contacted Mr. Barnes at all. We never heard from Mr. Cupp formally until the day he came into the office a month later."

The facts are for the board, and the evidence must be viewed in the light of its findings. Under all the circumstances, we find no reason to reverse its decision.

Decision affirmed.

———

DISSENTING OPINION BY WATKINS, J.:

I would reverse the Unemployment Compensation Board and award benefits to the claimant. In this case the record discloses that this employer had full knowledge of the claimant's embroilment with the law because he was arrested at his place of employment; and that his imprisonment, which caused his absence from work was by operation of law, in his inability to secure bail. The record shows that he did not personally notify his employer of his predicament. The record, however, shows notice to the employer because his

arrest took place on the employer's premises; that he was visited by his immediate superior, an agent of the employer, while he was in jail; that his sister and mother visited the employer to discuss his problem; and that he gave a note to his mother for the employer which was never received. From all this it seems clearly evident that he had no intention to abandon his job but was prevented by the circumstances above described from being available for his duties.

It is true that the claimant did not personally communicate with his employer or, as the testimony has it, "we never heard from Mr. Cupp formally." But this is easily understandable, when he was in jail in default of bail on a serious charge. The rules prevented his use of the telephone. It is a reasonable inference that this claimant, in all good faith, had already brought home to his employer notice of the reason for his failure to report for work and his desire to maintain the employer-employee relationship. He attempted to return to his work as soon as he was released.

As to availability for work, it was certainly impossible for this claimant under the circumstances to indicate when he would be able to return. At the time of his arrest he was presumed to be innocent and his incarceration and unavailability for work was due entirely to the operation of law in his failure to secure bail until May 15, 1963. At that time he applied for his work and was discharged. He was subsequently acquitted of the charge.

This claimant was employed by D. A. Barnes Hardware, for a period of two years before his arrest. I do not see how an arrest on a prior occasion on similar charges has anything to do with a charge of voluntary quit upon which this denial of benefits is based or for any other reason. This man was employed for two years subsequent to that prior charge and evidently proved a satisfactory employee. This is also true of

subsequent trouble with the law which involved differ-ent employment periods and is immaterial to the present problem.

The only question before us that has been decided by the majority is that this claimant is not entitled to benefits because "the claimant must be considered to have terminated his employment without cause of a necessitous and compelling nature within the meaning of Section 402(b)(1) of the law." It is beyond my comprehension why an arrest and imprisonment of a man charged with a crime and ultimately acquitted is not such a necessitous and compelling reason. It is true that at the end of the thirty-day period when he finally obtained bail and reported for work he was not then acquitted of the charge but he was entitled to be presumed to be innocent.

It is true that when a claimant is charged with a heinous crime which may result in unpleasant notoriety for the employer's business, although it seems to be unfair, he could be discharged even though found to be innocent but I do not believe that in such a situation imprisonment can be tortured into an abandonment of his employment so as to deprive him of his unemployment compensation benefits under the law.

In *Martinez Unemployment Compensation Case,* 186 Pa. Superior Ct. 50, 140 A. 2d 351 (1958), this Court reversed the Board and allowed claimant to recover because he had informed his employer of his leaving by a letter which was misdirected. In that case the period of claimant's absence was twenty-three days as compared to an absence of thirty days in the present case. In this case, not only did claimant's employer know that he was in prison, having been arrested on the premises, but he also spoke to employee's mother and sister about the situation and the claimant's immediate superior in the employer's business had visited him during his imprisonment.

In addition to this the testimony shows that he asked his mother to deliver a note to his employer but it was never received. This Court in the *Martinez Unemployment Compensation Case,* supra, said at page 53: "Claimant, confronted with an emergency due to an accident involving his mother in Puerto Rico, informed his foreman that he was leaving. When he arrived in Puerto Rico, he mailed the two letters, one to his wife, and one to his plant manager explaining the situation, but because of a mistake the letters were misdirected. It is clear that he fully intended with good faith to keep alive the employment relationship, and that he promptly attempted to do so under the exigencies of the situation. By an unfortunate occurrence his efforts in this respect were not fully consummated. When claimant returned to work just twenty-three days after leaving, which was not an unreasonably long period of time under the circumstances, he found himself unemployed. On basis of the admitted facts claimant should not have been disqualified under section 402(b)."

It is true that whether a claimant has taken reasonable precautions to guard his employment status is primarily a question of fact for the Board but here the facts of his imprisonment and his attempt to keep alive the employment relationship are clear so that the question before us is whether the Board properly concluded from the record facts that claimant's employment was due to voluntarily leaving work without cause of a necessitous and compelling nature. This is a question of law.